## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

NEIL DYER,

      Plaintiff,

v.                                    Case No: 5:18-cv-323-JSM-PRL

BANK OF NEW YORK MELLON and JP
MORGAN CHASE BANK, NA,

      Defendants.

_____/

### PLAINTIFF'S OBJECTION TO
### DEFENDANTS' MOTION TO DISMISS COMPLAINT

**COMES NOW,** Plaintiff Neil Dyer and files this Objection to Defendant The Bank of New York  Mellon's ("BONY") Motion to Dismiss the Complaint and states as follows:

### STANDARD OF REVIEW ON MOTION TO DISMISS

When ruling upon a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept the factual allegations set forth in the complaint as true. *Beepot v. J.P. Morgan Chase Nat'l Corporate Servs.*, 57 F. Supp. 3d 1358, 2014 U.S. Dist. LEXIS 154304. In addition, all reasonable inferences should be drawn in favor of the plaintiff.

It is well established that courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on rule 12(b)(6) motions to dismiss. *Dunn v. Castro*, 621 F.3d 1196, 1205. The Complaint is required to contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). This standard is met where "the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949.

## INTRODUCTION

Defendant asserts that this action stems from the foreclosure of a mortgage loan. That statement may be partially accurate. This action is really an action against Defendants for fraud/forgery.  Plaintiff only became aware of the availability of the technology available for analysis of documents in 2017 and immediately took action to have the alleged "Original Promissory Note" analyzed.

## I. LITIGATION PRIVILEGE DOES NOT BAR THIS CASE

The first key in determining the viability of Defendant's claim of protection, by asserting a defense of Litigation Privilege, is to ascertain the default status of Plaintiff's loan in question at the time Defendants' initiated their attempt to proceed with collection. Plaintiff submits that Defendants are debt collectors under the meaning of the FDCPA. *See Yarney v. Ocwen Loan Servicing, LLC*, 929 F.Supp.2d 569 (W.D. Va. 2013)  Under the statute, "[f]or an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired." *Bridge v. Ocwen Federal Bank, FSB,* 681 F.3d 355, 359 (6th Cir.2012). "The same is true of a loan servicer, which can either stand in the shoes of a creditor or become a debt collector, depending on whether the debt was assigned for servicing before the default or alleged default occurred." *Id.* (citations omitted). Accordingly, while there is no statutory definition for loan servicer under the FDCPA, "a loan servicer will become a debt collector under 1692a(6)(F)(iii) if the debt was in default or treated as such when it was acquired." *Id.* at 360 n.

4. *See also Castrillo v. American Home Mortg. Servicing, Inc.,* 670 F.Supp.2d 516, 524 (E.D.La.2009)

Section 1692e of the FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

unconscionable 15 U.S.C. § 1692e. Section 1692f states that "[a] debt collector may not use unfair or means to collect or attempt to collect any debt." Id.§ 1692f.

Because Congress did not provide a definition for the terms "unfair" or "unconscionable," this Court has looked to the dictionary for help. "The plain meaning of 'unfair' is 'marked by injustice, partiality, or deception.' " *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1200 (11th Cir.2010) (quoting Merriam–Webster Online Dictionary (2010)). Further, "an act or practice is deceptive or unfair if it has the tendency or capacity to deceive." *Id.* (quotation marks omitted and alterations adopted). We also explained that "[t]he term 'unconscionable' means 'having no conscience'; 'unscrupulous'; 'showing no regard for conscience'; 'affronting the sense of justice, decency, or reasonableness.' " *Id.* (quoting Black's Law Dictionary 1526 (7th ed.1999)). We have also noted that "[t]he phrase 'unfair or unconscionable' is as vague as they come." *Id.* (quoting *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 474 (7th Cir.2007)).

In *Blevins v. Hudson & Keyse, Inc.*, 395 F. Supp. 2d 662 (S.D. Ohio 2004) the Court stated that the state law litigation privilege does not apply to the case at bar. In *Blevins* the complaint was made pursuant to the FDCPA. The Court stated in pertinent part as follows:

> "Does the FDCPA abrogate this firmly rooted state law privilege? As originally passed, the statute excluded "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client" from the definition of "debt collector." Pub.L. 95-109, sec 803(6) (F). Plainly Congress intended not to regulate debt collection litigation when conducted

by attorneys. But Congress repealed the attorney exemption in 1986 without creating a litigation or litigation-related exception for attorneys OR for traditional debt collectors.

In Heintz v. Jenkins, 514 U.S. 291, 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995), the Supreme Court unanimously held that the Act applies to lawyers'"litigation activities." There, a bank's attorney filed suit against a debtor and, during the course of the litigation, sent a letter to the debtor's attorney trying to settle the case. The complaint and the letter both erroneously sought recovery of an amount for insurance coverage which turned out to be beyond the scope of the original loan agreement. The debtor then sued the attorney under several provisions of the FDCPA. The Seventh Circuit held the attorney was subject to the FDCPA, disagreeing with the Sixth Circuit's contrary opinion in Green v. Hocking, 9 F.3d 18 (6th Cir.1993). The Supreme Court affirmed the Seventh Circuit, rejecting the rationale set forth in Green that subjecting litigation-related activities to FDCPA liability would create intolerable conflicts. If an attorney can be liable for "litigation activities" which can include filing an affidavit, then certainly H & K is subject to the same liability."

Plaintiff's claims in this case are made pursuant to both the FDCPA and FCCPA.

In addition, in *Debrincat v. Fischer*, SC 15-1477, 42 Fla. Weekly S141a (Florida Supreme Court 2017), the Florida Supreme Court made it clear that litigation privilege does not apply to bar all actions arising from conduct in prior litigation. The Court held: " However, this Court has explained that it's "recognition of the (litigation) privilege derived from a balancing act of two competing interests- the public interest in allowing litigants and counsel to freely and zealously advocate for their causes in court versus protecting the rights of individuals, including the right of an individual to maintain his or her reputation and not be subjected to slander or malicious conduct." *Delmonico*, 116 So. 3d at 1217.

Also, in his concurring opinion in *Echevarria, McCalla, Raymer, Barrett & Frappier etc. v. Cole*, SC05-564 (Florida Supreme Court 2007), cited by Defendant as authority in its Motion to Dismiss,  Justice Wells stated "Therefore, the litigation privilege should not be structured so as to deprive those who are intended to have the protection of the law in respect to communications from having that protection."

Litigation Privilege was never intended to, nor does the law in anyway provide protection for, any party that commits fraud upon the Court. For a party involved in litigation to attempt to claim immunity from sanctions, penalties, or even criminal prosecution, for fraudulent acts committed in furtherance of any legal proceeding flies in the face of the tenets upon which our legal system was founded. The Defendant's claims of protection under Litigation Privilege are rich with irony as are their fraudulent activities, in presentation a completely fabricated, cut and paste forged version of the Plaintiff's alleged "Original Promissory Note "to the Court in the foreclosure case against Plaintiff in an illegal attempt to unlawfully foreclose on the Plaintiff's property.

Litigation Privilege clearly does not apply to require the dismissal of this case. Therefore, Defendant's Motion to Dismiss should be denied.

## II. Defendant Committed Fraud on the Court and Plaintiff

To establish proof of the Defendants' misdeeds and provide the Court with verifiable evidence of the forged "Original Promissory Note" the Plaintiff has gone to extraordinary steps to determine the Note's authenticity and then provide the evidence to this Honorable Court.

The Plaintiff offers the following:  Plaintiff's assignee, under the supervision of a Clerk of Court designee, viewed and then procured several high definition MultiSpectral UltraViolet and Near Infrared digital images of the alleged "Original Promissory Note" produced by Defendants in the foreclosure case against the Plaintiff. Plaintiff's assignee then procured additional ultra high definition digital images by scanning the alleged "Original Promissory Note" filed with the Court. It is important to note, the document being photographed and scanned by Plaintiff was submitted by Defendants to this Honorable Court, as part of a

conspiracy, in a fraudulent attempt to wrongfully deprive a homeowner of their home. In furtherance of the scheme to defraud, the alleged "Original Promissory Note's" authenticity was sworn to and included as an exhibit in a verified complaint, and entered into evidence during trial by Defendants in the Foreclosure Case against Plaintiff. The images procured by Plaintiff of the alleged "Original Promissory Note" were provided to Document Analyst Expert Gary Michaels for a comprehensive forensic document examination and evaluation.  Mr. Michaels, using no less than seventeen (17) different independent of state of the art forensic evaluation techniques, examined the alleged "Original Promissory Note" then compiled those scientific forensic results into a comprehensive report. The results of the forensic examinations conducted revealed that the alleged "Original Promissory Note" is IN FACT not the Original Promissory Note at all but is moderately sophisticated digital recreation of the Original Promissory Note, using commonly available digital image creation and alteration software, cut and paste image manipulation programs, and Defendants then printed out the forgery using an inkjet printer. The Plaintiff's purported "original wet ink signature" appearing on the alleged "Original Promissory Note" in question, when viewed under the Ultra Violet & Near-Infrared (UVIR) light spectrums reveal that the signature line and font letters located below the authorized signature were cut and "pasted" ("photoshopped") **ON TOP OF** or **OVER THE TOP OF** the Plaintiff's purported signature on the document. To clarify further, if the alleged "Original Promissory Note" were in fact the ACTUAL "Original Promissory Note", physically signed at the time of the loan's origination, by the Plaintiff, **with an ink pen,** commonly referred to as bearing a "wet-ink" signature, the Plaintiff's signature would appear **ON TOP** of the signature lines. As common sense would dictate, it is physically impossible for a signatory to sign a document in such a manner so that their signature would appear UNDER the ink that was already printed on the

surface of the document being signed. Interestingly enough, ONLY TWO WAYS exist in which this bizarre anomaly can be created, both being forgery techniques. One way is for the forger to sign a blank piece of copy paper in the precise area that the signature line printing will occur, then flip over and invert the signed copy paper, place it in the printer paper tray, and print out the document being forged. The second way to create the anomaly is to digitally create the entire document, using any of a variety of image manipulation software programs, and "cut and Paste" a signature from a document already digitally stored from a previous digital scan, and place the signature line and accompanying font over the "cut and pasted" signature. This technique ensures proper font sizing, character spacing, pixel uniformity, and document alignment. Then the newly created forgery is printed out and submitted as an original to this Honorable Court. Both forgery techniques will appear to the naked eye to be an original document but neither forgery technique can withstand even a moderate level of forensic investigation.

It should come as no surprise to anyone that the ACTUAL "Original Promissory Note", signed by Plaintiff, was converted to an electric file and then destroyed by the bank, as virtually every major banking institution has followed that very procedure since Note securitization became common place in the late 1990s. In 2009, in an unexpected twist of fate, the Florida Bankers' Association, unwittingly and quite publicly, confessed to having full knowledge of and endorsing this industry procedure. The following is an excerpt from the Florida Bankers' Association comments to the Florida Supreme Court in Case No. SC 2009-1460, dated September 28, 2009:

> **"In actual practice, confusion over who owns and holds the note stems less**
>
> **from the fact that the note may have been transferred multiple times than it**

**does from the form in which the note is transferred. It is a reality of commerce that virtually all paper documents related to a note and mortgage are converted to electronic files almost immediately after the loan is closed. Individual loans, as electronic data, are compiled into portfolios which are transferred to the secondary market, frequently as mortgage-backed securities. The records of ownership and payment are maintained by a servicing agent in an electronic database. The reason "many firms file lost note counts as a standard alternative pleading in the complaint" is <u>because the physical document was deliberately eliminated to avoid confusion immediately upon its conversion to an electronic file.</u> _See State Street Bank and Trust Company v. Lord_, 851 So. 2d 790 (Fla. 4th DCA 2003). Electronic storage is almost universally acknowledged as safer, more efficient and less expensive than maintaining the originals in hard copy, which bears the concomitant costs of physical indexing, archiving and maintaining security. It is a standard in the industry and becoming the benchmark of modern efficiency across the spectrum of commerce—including the court system."**

Based on Mr. Michaels' findings, Defendants failed to meet the requirements for entitlement to a foreclosure judgment to provide the original "wet ink" Note to the Court. See Fla. Stat. 702.015(4) and _Perry v. Fairbanks Capital Corp_., 888 So. 2d 725(Fla. 4th DCA 2004).

Since Defendant did not possess the "Original Promissory Note", it should have included a lost and / or destroyed claim in its foreclosure complaint instead of misrepresenting to the Court that the they had provided the "Original Promissory Note" to the Court.

Defendant has committed fraud on the Court and Plaintiff by providing a document to the Court as an "Original Promissory Note" which is not an original document and obtaining a foreclosure judgment and proceeding to sale based on same.

Defendants and their Counsel should have verified the trustworthiness of the alleged "original" note. Instead, Defendants and their Counsel proceeded to collect on a debt for which an "Original Promissory Note" was not possessed.

Defendants and their Counsel knew, should have known, or should be deemed to have known that the alleged "Original Promissory Note" filed with the Court in the Foreclosure Case was not an original document and that the filing of the alleged original documents was false at the time the filing was done.

Defendants and their Counsel intended the Court and Plaintiff to act in reliance on their misrepresentation which shows a reckless disregard for: the consequences to Plaintiff; the integrity of the Court; and truthfulness to the tribunal.

Defendant and their Counsel appear to be involved in a scheme involving illicit document manufacturing.

Plaintiff asserts that the following State of Florida crimes have been committed for the sake of illegal profits by Defendants and their Counsel as a result of document manufacturing, alteration, recreation or otherwise fabrication of a document that represents actual cash value, legal tender, negotiable value and/or a debt security and further representing the instrument as authentic and presenting the fabricated document for purposes of financial gain:

817.02     Obtaining property by false personation.

817.03     Making false statement to obtain property or credit.

817.16     False reports, etc., by officers of banks, trust companies, etc., with intent to defraud.

817.535    Unlawful filing of false documents or records against real or personal property.

817.54     Obtaining of mortgage, mortgage note, promissory note, etc., by false representation.

817.545    Mortgage fraud.

817.562    Fraud involving a security interest.

831.02. Uttering forged instruments

Florida Courts recognize the principle that a party who has been guilty of fraud or misconduct in the prosecution or defense of a civil proceeding should not be permitted to continue to employ the very institution it has subverted to achieve his or her ends. *Carter v. Carter*, 88 So.2d 153 (Fla. 1956).

Florida's Fifth District Court of Appeal in *Wells Fargo Bank Nat'l Ass'n v. Bird* 234 So. 3d 833 (Fla. 5th DCA 2018) plainly stated their position when Defendant's rely on fraudulently created documents in foreclosure cases the court ruled:

"Here, it is undisputed that Borrowers' signatures on the mortgage were forged. Consequently, there was no valid contract between Borrowers and Wells Fargo. *See Jamnadas v. Singh*, 731 So.2d 69, 70 (Fla. 5th DCA 1999) ("A forged mortgage is void, a legal nullity." (citing Se. Bank, N.A. v. Sapp, 554 So.2d 1193 (Fla. 1st DCA 1989) )).

It is clear from applicable case precedent that fraud on the Court is a basis for the reversal of a judgment and/or dismissal of a case with prejudice. *See Kornblum v. Schneider*, 609 So.2d 138, 139 (Fla. 4th DCA 1992); *Bird v. Hardrives of Delray, Inc*., 644 So.2d 89, 90 (Fla. 4th DCA 1994); *O'Vahey v. Miller*, 644 So.2d 550 (Fla. 3d DCA 1994); *Figgie Int'l, Inc. v. Alderman*, 698 So.2d 563 (Fla. 3d DCA 1997); *Millan v. Williams*, 655 So.2d 207, 208 (Fla. 3d

DCA 1995); *Bologna v. Schlanger*, 995 So. 2d 526, 528 (Fla. 5th DCA 2008); *Granados v. Zehr*, 979 So. 2d at 1158 (Fla. 5th DCA 2008); *Gehrmann v. City of Orlando*, 962 So. 2d 1059, 1062 (Fla. 5th DCA 2007); *Kirby v. Adkins*, 582 So.2d 1209 (Fla. 5th DCA 1991); *Savino v. Florida Drive In Theatre Management, Inc.,* 697 So.2d 1011 (Fla. 4th DCA 1997

Over 140 years ago, in *U.S. v. Throckmorton*, 98 U.S. 61 (1878) the Court stated: "There is no question of the general doctrine that fraud vitiates the most solemn contracts, documents, and even judgments." The Court continued to state "Fraud vitiates everything, and a judgment equally with a contract -- "

Fraud trumps all- including Defendant's claim that the case should be dismissed based on litigation privilege, therefore, the Court should deny Defendants' Motion to Dismiss accordingly.

## III. The Complaint is not barred by Res Judicata

When there has been fraud upon the Court, the Court is not restricted by the doctrines of Res Judicata. *See Toledo Scale Company v. Computing Scale Company, Fidelity & Deposit Company of Maryland et al. v. Computing Scale Company, et al.* 261 U.S. 399 ( US Supreme Court 1923) and *Marshall v. Holmes*, 141 U.S. 589 ( US Supreme Court 1891) (and see Section II above)

*In Norfolk Southern Corp. v. Chevron, U.S.A.*, 279 F.Supp.2d 1250, 1260 (M.D. Fla. 2003), the Court sets out the applicable requirements for a case to be barred by res judicata:

> (1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action.

(citing *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1187 (11th Cir. 2003); I*n re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001). *Also see Bartram v. US Bank*, SC14-1265 (Florida

Supreme Court 2016) and *Porter v. Saddlebrook Resorts, Inc.*, 679 So.2d 1212, 1214–15 (Fla. 2d DCA 1996).

The fourth required criteria is absent in the case at bar since the causes of action are not identical to the prior foreclosure lawsuit.  The Plaintiff filed this lawsuit upon discovery of new evidence of fraud by the Defendants.

Since there is no record of any litigation of the facts upon which the Plaintiff has filed this action and there is no proof that any of the allegations argued in Plaintiff's Complaint were factual issues litigated in a prior proceeding, therefore, res judicata does not apply to this action.

The court in *Concordia v. Bendekovic*, 693 F.2d 1073, 1075 (11th Cir. 1982), stated the following:

> Res judicata, however, is not a defense under 12(b); it is an affirmative defense that should be raised under Rule 8(c).  *Moch v. East Baton Rouge Parish School Board*, 548 F.2d at 596 n.3; *Sherwood v. Pearl River Valley Water Supply District*, 427 F.2d 717 (5th Cir.) (Godbold, J., dissenting), cert. denied, 400 U.S. 832, 91 S.Ct. 64, 27 L.Ed.2d 63 (1970); *Guam Investment Co. v. Central Building, Inc.*, 288 F.2d 19, 24 (9th Cir.1961).

The requirements for a claim to be barred by collateral estoppel are substantially similar to the requirements for application of res judicata. *See In Re St Laurent*, 991 F. 2d 673 (11th Cir. 1993) The requirements are not met as to this case since the issue at stake is not identical to the one decided in the prior proceeding and the issue was not litigated in the prior proceeding. The Court will find upon review of the Foreclosure Case that the issues addressed by this lawsuit were not argued in the foreclosure case.  The parties in the two (2) cases are not identical as JPMorgan Chase Bank, N. A.  was not a party to the Foreclosure Case, therefore, res judicata is not applicable to bar this lawsuit and Defendant's Motion to Dismiss must be denied.

## IV. LAWSUIT IS NOT BARRED BY STATUTE OF LIMITATIONS

The FDCPA and FCCPA claims should not be dismissed as outside the statute of limitations. For purposes of the FDCPA, the "Discovery Rule" applies and the statute does not begin to run until the plaintiff "discovers" the alleged violation, rather than from the date of occurrence of the activity that gives rise to the cause of action. *Skinner v. Midland Funding, LLC* (Case No 16-4522, U.S. District Court, ND, IL 2017) In *Skinner* the Court stated: "Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cancer Found., Inc. v. Cerberus Capital Mgmt.*, LP, 559 F.3d 671, 674 (7th Cir. 2009).

However, "dismissal is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Id*. at 674-75. "As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of limitations defense, questions of timeliness are left for summary judgment, at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc*., 782 F.3d 922, 928 (7th Cir. 2015) (parenthetical omitted). "The rule that postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured is the discovery rule of federal common law, which is read into statutes of limitations in federal-question cases in the absence of a contrary directive from Congress." *Cada v. Baxter Healthcare Corp*., 920 F.2d 446, 450 (7th Cir. 1990) (internal quotations and parenthetical omitted). "[T]he FDCPA contains no such provision signaling congressional intent to preclude application of the discovery rule to that Act." *Johnson-Morris v. Santander Consumer USA, Inc*. 194 F. Supp. 3d 757, 763 (N.D. Ill. 2016) (holding that the discovery rule applies to an FDCPA

claim); see *Greenfield v. Kluever & Platt, LLC*, No. 09 C 3576, 2010 WL 604830, at *2 (N.D. Ill. Feb. 16, 2010) (denying a motion to dismiss based on the statute of limitations, applying the discovery rule pursuant to *Cada*, and noting that Congress was silent on the issue of whether the discovery rule applied to the FDCPA.)

The general rule under Florida law as to a fraud claim is that the statute of limitations begins to run when the plaintiff discovers that a fraud occurred or, in the exercise of reasonable diligence, should have discovered the fraud. Generally, a cause of action accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy. The discovery rule is a limited exception which tolls the accrual of a cause of action which applies if, "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable."

Plaintiff was unaware of the scientific technology available for the analysis of documents until late in 2017 and immediately made arrangements to view the alleged original note with the Lake County Clerk. Plaintiff did not receive the Gary Michaels' Report until February 2018.

All of Plaintiff's claims were made within one (1) year of the receipt of the Michaels' Report. The FCCPA has a two (2)-year statute of limitations. As indicated by Defendant in its. Motion to Dismiss, it is intended to be a state version of the FDCPA, and explicitly defers to interpretations of the FDCPA in which the courts have interpreted that the statute of limitations begin to run when the plaintiff "discovers" the alleged violation, rather than from the date of occurrence of the activity that gives rise to the cause of action. Therefore, the FCCPA claim was filed within the applicable statute of limitations.

Under Florida law, a claim for fraud has a four (4) year statute of limitation that begins when the damage is incurred. Plaintiff asserts the damage occurred at the earliest when Plaintiff obtained the Michaels' Report in 2018.

In *Davis v. Monahan*, SC 01-1157 (Florida Supreme Court 2002) the Supreme Court stated: "The Florida Legislature has stated that a cause of action accrues or begins to run when the last element of the cause of action occurs. An exception is made for claims of fraud and products liability in which the accrual of the causes of action is delayed until the plaintiff either knows or should know that the last element of the cause of action occurred. Section 95.031, Florida Statutes (Supp.2000), provides:95.031   Computation of time.-Except as provided in subsection (2) and in s. 95.051 and elsewhere in these statutes, the time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues.(1) A cause of action accrues when the last element constituting the cause of action occurs. .(2)(a) An action for fraud under s. 95.11(3) must be begun within the period prescribed in this chapter, with the period running from the time the facts giving rise to the cause of action were discovered or should have been discovered within the exercise of due diligence, instead of running from any date prescribed elsewhere in s. 95.11(3), but in any event an action for fraud under s. 95.11(3) must be begun within 12 years after the date of the commission of the alleged fraud, regardless of the date the fraud was or should have been discovered.(b) An action for products liability under s. 95.11(3) must be begun within the period prescribed in this chapter, with the period running from the date that the facts giving rise to the cause of action were discovered, or should have been discovered within the exercise of due diligence, rather than running from any other date prescribed elsewhere in s. 95.11(3), except as provided within this subsection.(Emphasis added.)"

Courts have well recognized that case law supports the proposition that there is **no due diligence requirement** where **the adverse party knowingly puts on or uses false testimony.** *See McDonald,* 544 So.2d at 264; *Roberto v. Allstate Ins. Co.,* 457 So.2d 1148, 1150 (Fla. 3d DCA 1984).

Plaintiff's claims are well within the applicable statute of limitations and Defendant's Motion to Dismiss should be denied.


## V.  COMPLAINT STATES A VALID CLAIM AND DEFENDANT IS A DEBT COLLECTOR

The Complaint should not be dismissed for failure to state a claim because the Complaint satisfies the 12(b) required standards. It is well established that courts must consider the complaint in its entirety, as well as other sources courts ordinarily examined when ruling on rule 12(b)(6) motions to dismiss. *Dunn v. Castro*, 621 F.3d 1196, 1205. The Complaint is required to contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). This standard is met where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Here, the Complaint applies detailed facts and exhibits to show the Defendants' conduct of providing a forged note to the Court in the Foreclosure Complaint which is misrepresentation/fraud. The claims as Defendants' forgery are not totally without merit as stated in Defendant's Motion to Dismiss and are supported by valid competent, reliable evidence - the Report of Gary Michaels.

Defendants had a duty of due diligence to investigate beyond the mere allegations of the authentication of the instrument prior to defrauding others for a monetary gain. *Blue v. United*

*States Dep't of the Army*, 914 F.2D 525, 542 (4th Cir. 1990). The Defendants are responsible, and not exempt, for statements and representations made when inducing the conduct of another for a monetary gain. "The court concluded that the doctrine of caveat emptor does not exempt the acts of fraud or the responsibility for statements and representations which induces a purchaser to act when, under the circumstances, the statements amount to fraud in the legal sense." *Johnson v. Davis*, 480 So. 2d 625, 1985 Fla. LEXIS 4023, 10 Fla. L. Weekly 583. *See also Futura Realty v. Lone Star Bldg. Centers, Inc.,* 578 So. 2d 363, 627, 1991 Fla. App. LEXIS 3294, 12 A.L.R.5th 1087, 16 Fla. L. Weekly D 960. Here, the Defendants moved forward with a foreclosure against Plaintiff improperly affecting the Plaintiff's interest in his property. Defendants acted in bad faith for a monetary gain when Defendants knew or should have known the alleged "Original Promissory Note" was a forgery.

Defendant's Motion to Dismiss should be denied because the Complaint states a valid claim and in no way relies upon on mere legal conclusions but instead contains a detailed factual account of Defendants' illegal activity which establishes their liability for violations of both the FDCPA and  FCCPA based on misrepresentation.

## A. Defendant is a Debt Collector

Contrary to the arguments in Defendant's Motion to Dismiss, as indicated in I. above, Defendants are debt collectors for purposes of the FDCPA and FCCPA as parties collecting on a debt taken after the debt was in default. Defendants are not the original lender of the Plaintiff's loan. The loan was issued by Homebank Mortgage Corporation. Defendants allege that the Plaintiff defaulted on the loan in February 2011. Defendants took the loan and became the loan servicer after it was in default (see Assignment of Mortgage recorded in Lake County Florida on December 8, 2011.  Therefore, Defendant's Motion to Dismiss should be denied.

## VI. PLAINTIFF REQUESTS ONE-TIME AMENDMENT PURSUANT TO RULE 15 OF THE FEDERAL RULES OF CIVIL PROCEDURE

As indicated by the facts of this case, Plaintiff has valid claims against BONY as Trustee at least on an equitable basis. Rule 15 of the Federal Rules of Civil Procedure provides authority to permit a party to amend their pleadings: "The court should freely give leave when justice so requires." In the event the Court determines that there are deficiencies in the Complaint, Plaintiff requests the Court dismiss the Complaint without prejudice and permit Plaintiff to amend the Complaint in the interest of equity and justice.

Plaintiff's Counsel has contacted Counsel for Defendant BONY as required by Local Rule 3.01 and they are opposed to the amendment of the Complaint.

Public policy favors the liberal amendment of pleadings so that cases can be tried on their merits. *See Sun Valley Homeowners, Inc. v. American Land Lease, Inc*., 927 So. 2d 259 (Fla. 2nd DCA 2006). A one-time amendment to a Complaint should be granted unless it clearly appears the amendment would prejudice the opposing party, the privilege to amend has been abused, or the amendment would be futile. e.g. *Bill Williams Air Conditioning & Heating v. Haymarket Coop. Bank*, 592 So. 2d 302, 305 (Fla. 1st DCA 1992), rev. dismissed, 598 So. 2d 76 (Fla. 1992). *Also see Morgan Co. Inc. v. Orange County*, 818 So. 2d 640 (Fla. 5th DCA 2002); *Greene v. Well Care HMO, Inc.,* 778 So. 2d 1037 (Fla. 4th DCA 2001).

Plaintiff has not yet amended the Complaint and a responsive pleading has not been filed. If the Court is inclined to dismiss Plaintiff's Complaint, then Plaintiff requests leave from the Court to file an Amended Complaint. In addition, Plaintiff needs to amend the Complaint to correctly name BONY as a defendant solely in its capacity as Trustee of the Structured Asset

Mortgage Investments II Inc., Bear Stearns Alt-ATrust, Mortgage Backed Certificates Series 2004-5.

**CONCLUSION**

Plaintiff understands the gravity of the allegations being made against Defendants, and after reviewing the previously filed pleadings and evidence, is certain that the evidence relied upon as a basis for filing the case at hand is both validated and substantial. Plaintiff can assure the Court that Plaintiff's allegations are true and Plaintiff can provide the Court with sufficient factual evidence, not opinion or hyperbole, to support its claims that Defendants have committed fraud on the Court and Plaintiff. Defendant has willfully, with specific intent, and scienter provided to the Lake County Clerk of Court, this Honorable Court, and the Plaintiff a forged "Original Promissory Note". It should go without saying that any willful attempt to deceive the Court is viewed as egregious behavior, but utilizing the Court as a pawn in the furtherance of, and execution of, a criminal conspiracy is not only brazen but unconscionable.

There is no mistaking Plaintiff's allegations, insinuations, or outright accusations, Plaintiff plainly states the following for this Honorable Court's clarification:

Defendants have presented to the Circuit Court of Lake County, Florida, a document, deemed necessary under Florida Law to obtain a foreclosure judgment against Plaintiff (Defendant in foreclosure case). The document admitted into evidence is alleged by Defendant to be Plaintiff's "Original Promissory Note", supposedly signed by Plaintiff at inception of the loan. This document, alleged to be the "Original Promissory Note" is IN FACT a forgery, a counterfeit, a recreation, being presented to the Court and Plaintiff in place of the actual "Original Promissory Note". Forensic examination results are as set forth in the Report and Affidavit of document expert analyst Gary Michaels attached to the Complaint. To advance the forensic document evaluation even further, and to provide this Honorable Court with a separate and additional third party forensic evaluation of the document presented by Defendant as "Plaintiff's Original Promissory Note" under the strict supervision of the Lake County Clerk of the Court with equipment that performs

Depth Profilometry via Multiplexed Optical High-Coherence Interferometry allowing among other things hyper-microscopic surface and contour evaluation.

Plaintiff asserts this Honorable Court deserves the opportunity to fully scrutinize with prudence and skepticism the Plaintiff's allegations, against Defendants and Defendants' Counsel, the current evidence and even further near future evidence being developed in support thereof.

**WHEREFORE**, Plaintiff requests the Court deny Defendants' Motion to Dismiss and permit Plaintiff to amend the Complaint.

Respectfully Submitted,

 /s/*Andrea M. Roebuck*
Andrea M. Roebuck, Esq.
FBN: 0089386
Best Defense Law, P.A.
100 Colonial Center Parkway, Suite 140
Lake Mary, FL 32746
Primary E-mail: aty.assistant@gmail.com
Secondary: ammrroebuck@gmail.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished via e-filing of the CM/ECF: Gina L. Bulecza, Esq., McGlinchey Stafford, PLLC, 10407 Centurion Parkway N., Suite 200 Jacksonville, FL 32256, gbulecza@mcglinchey.com mnew@mcglinchey.com;  Matthew D. Morton, McCalla Raymer, LLC., 201 N. Franklin St. Ste. 1375 Tampa, FL 33602, matthew.morton@mccalla.com, on this 14th day of August 2018.

/s /*Andrea M. Roebuck*
Andrea M. Roebuck Esq.